Filed 5/4/26  Sorensen v. San Mateo County Bar Assn. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| RODNEY SORENSEN,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SAN MATEO COUNTY BAR ASSOCIATION,<br><br>    Defendant and Appellant. | A172173<br><br>(San Mateo County<br>Super. Ct. No. 24-CIV-01575) |

The San Mateo County Bar Association (Association) appeals a trial court order denying its anti-SLAPP motion to strike the complaint of plaintiff Rodney Sorensen.  (See Code Civ. Proc., § 425.16.)[1]  We affirm.

## I.  BACKGROUND

The Association is "a private lawyer-based trade association."  Its Private Defender Program (PDP) provides legal representation to indigent criminal defendants and children in San Mateo County.  It receives funding for the PDP pursuant to "legal services agreements" it entered into with San Mateo County and the San Mateo County Superior Court.  Sorensen is a member of the Association.

---

[1] "SLAPP" stands for "strategic lawsuit against public participation." (Code Civ. Proc., § 425.18.)  All statutory references are to the Code of Civil Procedure unless otherwise specified.

Sorensen sued the Association, alleging that the legal services agreements were void on two grounds. First, under the agreements, the Association was to provide legal representation to indigent criminal defendants, but trade associations like the Association are legally prohibited from engaging in the practice of law. Thus, the legal services agreements "contemplate[d] [the] illegal act" of "the unauthorized practice of law" and were therefore void. Second, the complaint alleged that the Association's articles of incorporation prohibited the Association from entering into any contract that results in its members receiving financial gain. As a result, the Association's act of entering into the agreements constituted a "void ultra vires act[]," rendering the agreements void and unenforceable.

Based on those allegations, the complaint asserted four causes of action for declaratory relief. Sorensen alleged there was "an actual controversy" regarding whether the legal services agreements were void and unenforceable. He sought a declaration that the agreements were void.

Copies of the legal services agreements were attached to the complaint. Pursuant to its agreement with San Mateo County, the Association agreed to provide qualified attorneys through its PDP for "financially eligible persons entitled to court appointed counsel" in certain types of cases, including criminal and juvenile delinquency cases. Under its agreement with the San Mateo County Superior Court, the Association agreed to provide legal representation to financially eligible children and parents in juvenile dependency proceedings. Per the terms of the agreements, the Association would be compensated for the amounts it paid "for representation of PDP clients."

The Association responded to Sorensen's complaint with an anti-SLAPP motion to strike all causes of action, arguing in part that the causes

2

of action arose from the Association's allegedly improper practice of law. The Association further argued that Sorensen could not show a probability of prevailing on his claims.

In opposition, Sorensen argued that the Association had not established that his complaint arose from protected activity. He contended his causes of action did not involve attorney-client communications or "communications concerning pending litigation" and were instead based on the legal services agreements, which he asserted were commercial contracts that had "nothing to do with free speech or petitioning activities." He further argued that he met his burden of establishing a probability of prevailing on his claims.

After a hearing, the trial court issued an order denying the motion on the ground that the Association failed to show that the challenged causes of action arose from protected activity under section 425.16. The court concluded that the acts giving rise to Sorensen's claims were unprotected "acts of contracting."

## II. DISCUSSION

The Association contends the trial court erred in denying its motion to strike the complaint because Sorensen's causes of action arise from constitutionally protected activity under section 425.16. We disagree.

### A. Anti-SLAPP Law and Standard of Review

"To combat lawsuits designed to chill the exercise of free speech and petition rights (typically known as strategic lawsuits against public participation, or SLAPPs), the Legislature has authorized a special motion to strike claims that are based on a defendant's engagement in such protected activity." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1060 (*Park*).)

The resolution of a special motion to strike under section 425.16 involves two steps.  "Initially, the moving defendant bears the burden of establishing that the challenged allegations or claims 'aris[e] from' protected activity in which the defendant has engaged." (*Park*, *supra*, 2 Cal.5th at p. 1061.)  At the first prong of the anti-SLAPP analysis, the defendant must (1) identify the acts that "underlies or forms the basis for the claim" and (2) demonstrate that those acts constitute protected activity under section 425.16, subdivision (e), which enumerates four categories of protected activity.  (*Park*, at pp. 1062–1063; *Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 884.)  If the defendant carries its burden at the first prong of the analysis, the plaintiff must then demonstrate the claims have minimal merit.  (*Park*, at p. 1061.)

Our review of the order denying the anti-SLAPP motion is de novo. (*Park*, *supra*, 2 Cal.5th at p. 1067.)  "We exercise independent judgment in determining whether, based on our own review of the record, the challenged claims arise from protected activity." (*Ibid*.)

### B. Analysis

The Association argues that Sorensen's claims arise from allegations that it engaged in the unauthorized practice of law, noting that the complaint is "replete with such allegations."  It asserts that "whether entering into the [legal service] agreement is protected activity is irrelevant" because the correct inquiry is whether the Association's provision of legal representation to indigent parties is protected under section 425.16, subdivision (e)(1) and (2).  Sorensen disagrees, contending that his claims arise from a controversy over the validity of the legal services agreements.

On the "arising from" requirement (§ 425.16, subd. (b)(1)), a defendant must do more than identify allegations of protected activity in the complaint.

4

Rather, " 'the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech.' " (*Park*, *supra*, 2 Cal.5th at p. 1063.) "In other words, a claim does not 'arise from' protected activity simply because it was filed after, or because of, protected activity, or when protected activity merely provides evidentiary support or context for the claim." (*Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 621.)

"[I]n ruling on an anti-SLAPP motion, courts should consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability." (*Park*, *supra*, 2 Cal.5th at p. 1063.) The conduct that forms the basis for a claim is the " ' "core injury-producing conduct" ' warranting relief under that cause of action." (*Mission Beverage Co. v. Pabst Brewing Co., LLC* (2017) 15 Cal.App.5th 686, 698.)

Sorensen's complaint asserts causes of action for declaratory relief. "In order to state a claim for declaratory relief, there must be an 'actual controversy' relating to the legal rights and duties of the parties." (*Country Side Villas Homeowners Assn. v. Ivie* (2011) 193 Cal.App.4th 1110, 1118, citing § 1060.) Thus, in determining the acts giving rise to Sorensen's claims, we must consider the "actual controversy" alleged in the complaint and the declaration sought by Sorensen. (See *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 79 (*City of Cotati*); *Willis v. The Walt Disney Co.* (2025) 115 Cal.App.5th 1001, 1015 [looking to the "actual controversy" alleged in the complaint and the declaration sought by the plaintiff in determining whether declaratory relief claims arose from protected activity under § 425.16].)

In *City of Cotati*, for example, some of the city's property owners sued the city in federal court, seeking declaratory relief on the question of whether

5

the city's rent-restriction ordinance was constitutional. (*City of Cotati*, *supra*, 29 Cal.4th at pp. 72–73.) The city then sued the owners in state court, seeking declaratory relief on the same question. (*Ibid.*) The owners brought an anti-SLAPP motion in the state court action, arguing that the city's complaint arose from the owners' filing of the earlier federal action. (*Ibid.*) The trial court granted the motion. (*Ibid.*) After the appellate court reversed, the Supreme Court granted review and concluded that the city's state court action did not "arise from" protected activity. (*Id.* at pp. 78–79.) Rather, looking to the "actual, present controversy" alleged in the complaint, it concluded that the city's lawsuit merely sought declaratory relief concerning the constitutionality of the city's ordinance. (*Id.* at p. 80.) The city may have filed its action " 'in response to' " the owners' federal court action, but the federal action was not the "actual controversy" underlying the city's declaratory relief claim. (*Id.* at pp. 77, 80.) In other words, "[t]he city's potential entitlement to a declaratory judgment . . . arose from the parties' underlying dispute over whether the ordinance was constitutional, a dispute that existed prior to and independent of any declaratory relief action by the owners." (*Park*, *supra*, 2 Cal.5th at p. 1063.)

Likewise, here, Sorensen's claims for declaratory relief are based on a dispute that exists independent of the Association's alleged practice of law. The complaint and each of its causes of action allege a controversy between the parties regarding whether the legal services agreements are void as an ultra vires act and/or because they "contemplate" the unauthorized practice of law. Accordingly, Sorensen seeks a declaration that the legal services agreements are void. A void contract is a contract that is invalid from its inception. (See *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 929.) Thus, the " ' "core injury-producing conduct" ' warranting relief"

6

under Sorensen's declaratory relief claims is the Association's act of entering into the legal services agreement. (*Mission Beverage Co. v. Pabst Brewing Co., LLC, supra,* 15 Cal.App.5th at p. 698.) The agreements may have led to the Association providing legal representation to indigent parties, but Sorensen could have omitted allegations regarding the Association's provision of legal services and still state his declaratory relief claims. (See *Park, supra,* 2 Cal.5th at p. 1068.) Thus, the Association's alleged practice of law is not the act supplying the basis for Sorensen's declaratory relief claims. The Association does not point to any evidence in the record that would lead us to a different conclusion. (See *Nirschl v. Schiller* (2023) 91 Cal.App.5th 386, 405 [courts must consider the parties' evidentiary submissions at the first step analysis "as 'a defense against artful pleading' "].)

The Association argues that the trial court applied the wrong standard in evaluating the "arising from" requirement of the anti-SLAPP analysis's first prong, pointing to the court's analysis in the order denying the anti-SLAPP motion. Even if the trial court's reasoning in denying the motion was incorrect, we will not reverse on that basis. Because our review is de novo, "we may affirm the trial court's order 'if it is correct on any ground, regardless of the trial court's reasoning.' "[2] (*Meads v. Driggers* (2025) 114

---

[2] For this reason, we also reject the Association's suggestion that reversal is required here on the ground that the trial court disregarded the complaint's allegations and improperly used the Association's evidence in evaluating prong one of the anti-SLAPP analysis. The authority it cites as support for this argument stands for the proposition that at the first step of the anti-SLAPP analysis a defendant may rely on the plaintiff's allegations alone in showing that a claim arises from protected activity. (See *Bel Air Internet, LLC v. Morales* (2018) 20 Cal.App.5th 924, 929, 935–936; *Abir Cohen Treyzon Salo, LLP v. Lahiji* (2019) 40 Cal.App.5th 882, 888.) This authority does not help the Association because, as discussed, the allegations

7

Cal.App.5th 28, 36; see *Coral Construction, Inc. v. City and County of San Francisco* (2010) 50 Cal.4th 315, 336 [" '[i]t is axiomatic that we review the trial court's rulings and not its reasoning' "].) Based on our review of the complaint, we reach essentially the same conclusion as the trial court that the Association's act of contracting with third parties, and not its alleged unauthorized practice of law, was the basis for Sorensen's declaratory relief claims.

Turning to the second step of the anti-SLAPP analysis's first prong, the Association had the burden of demonstrating that the act of entering into the legal services agreements constitutes protected activity under section 425.16, subdivision (e). It does not do so on appeal, as its arguments focus on whether its alleged practice of law constitutes protected activity under section 425.16, subdivision (e)(1) and (2).[3] Moreover, its cited authority appears distinguishable.

While the legal services agreements at issue here reflect the Association's promise to provide attorneys for indigent parties in a wide variety of cases, the common thread among the decisions relied on by the Association is that the challenged conduct related to a specific dispute. (See, e.g., *Optional Capital, Inc. v. Akin Gump Strauss, Hauer & Feld LLP* (2017)

---

that the Association is engaging in the unauthorized practice of law do not give rise to Sorensen's declaratory relief claims.

[3] The Association argues for the first time in its reply brief that its "negotiation and maintenance" of the legal services agreements constitute protected activity because those communications "are functionally related to the provision of legal defense to those most in need" and "fulfill the legal missions" of the Association and the court. The Association appears to be invoking subdivision (e)(4) of section 425.16 as support for this argument. We do not consider arguments the Association raises for the first time in its reply brief. (See *Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764.)

18 Cal.App.5th 95, 101, 113–115 [affirming order granting defendants' anti-SLAPP motion because the challenged conduct was the defendants' representation of a corporation in two court cases, which was protected under § 425.16, subd. (e)(2)]; *Bel Air Internet, LLC v. Morales*, *supra*, 20 Cal.App.5th at pp. 929, 941–942 [defendants' statements urging plaintiff's former employees to sue plaintiff for employment violations were protected under § 425.16, subd. (e)(2)]; *Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 907–908 [concluding that the plaintiff's cause of action "arose directly from [the defendant's] acts or statements . . . made in connection with environmental litigation he was bringing on behalf of" others], called into doubt on another ground in *People ex rel. Gallegos v. Pacific Lumber Co.* (2008) 158 Cal.App.4th 950, 961, fn. 5, and called into doubt on another ground in *McGrory v. Applied Signal Technology, Inc.* (2013) 212 Cal.App.4th 1510, 1539, fn. 18.)

This commonality in the Association's cited authority is consistent with the plain language of section 425.16, subdivision (e)(2), which protects communications "made in connection with an issue under consideration or review by a . . . judicial body." Because the subdivision requires the challenged communication to be in connection "with an issue under consideration or review" rather than in connection with litigation generally (§ 425.16, subd. (e)(2)), it is insufficient to assert that the acts alleged were connected to litigation. (*Paul v. Friedman* (2002) 95 Cal.App.4th 853, 867, abrogated on another ground by *Jacob B. v. County of Shasta* (2007) 40 Cal.4th 948, 960–962; *Optional Capital, Inc. v. Akin Gump Strauss, Hauer & Feld LLP*, *supra*, 18 Cal.App.5th at p. 114.) Rather, the communication must "relate[] to the substantive issues in the litigation" (*Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1266) or, for anticipated litigation, " 'concern[]

9

the subject of the dispute' " (*id.* at p. 1268). Moreover, for prelitigation communications, there must be a showing that the litigation was " ' "contemplated in good faith and under serious consideration" ' " at the time the communications occurred. (*Ibid.*) The "mere hypothetical possibility of litigation" does not warrant protection under section 425.16, subdivision (e)(2). (*Bel Air Internet, LLC v. Morales*, *supra*, 20 Cal.App.5th at p. 941.)

Similarly, subdivision (e)(1) of section 425.16 protects statements " 'made in' " an official proceeding or " 'before' " an official body but not statements or acts that occur outside such proceedings. (*Paul v. Friedman*, *supra*, 95 Cal.App.4th at p. 865.)

Citing these principles, the Association argues that the conduct giving rise to the agreements' alleged illegality is "litigation itself or an act that serves to prepare for" or "encourage" litigation. In so arguing, it relies on the allegation in the complaint that it was providing legal representation to individuals in various matters "[p]ursuant to" the legal services agreements. However, the Association does not attempt to show that the legal services agreements themselves were "made in" a judicial proceeding or in connection with "an issue under consideration or review" by a judicial body. (§ 425.16, subd. (e)(1), (2).) Nor has it demonstrated that at the time it entered into the legal services agreements, litigation was more than a mere possibility and was " ' "under serious consideration." ' " (*Neville v. Chudacoff*, *supra*, 160 Cal.App.4th at p. 1268.) Therefore, the Association has failed to demonstrate error. (See *Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6 [appellant has the burden to affirmatively demonstrate error, even on de novo review].)

In sum, the Association has not met its burden on prong one of the anti-SLAPP analysis as to Sorensen's complaint. Because we conclude that the

10

Association has not met its burden at the first step of the anti-SLAPP analysis, we do not reach step two.

### III.  DISPOSITION

The order denying the Association's anti-SLAPP motion is affirmed.


_____
LANGHORNE WILSON, J.


WE CONCUR:


_____
HUMES, P. J.


_____
SMILEY, J.


*Sorensen v. San Mateo County Bar Association / A172173*